**IN THE VIRGIN ISLANDS DISTRICT COURT**
**Division of St. Croix**

| | |
|---|---|
| SEAVIEW CAPITAL PARTNERS, INC., a British Virgin Islands corporation, as successor in interest to Executive Benefit Group Limited Partnership, a U. S. Virgin Islands limited partnership,<br><br>Plaintiffs;<br><br>v.<br><br>AMERUS LIFE INSURANCE COMPANY, an Iowa corporation; AVIVA LIFE AND ANNUITY COMPANY, an Iowa corporation; and LARRY D. BARKER,<br><br>Defendants. | No. ____________________<br><br>ACTION FOR DECLARATORY JUDGMENT AND SPECIFIC PERFORMANCE |

**COMPLAINT**

Plaintiff, for its cause of action, alleges:

**PROCEDURAL ALLEGATIONS**

**Subject Matter Jurisdiction**

1. Plaintiff Seaview Capital Partners, Inc. is a corporation organized and existing under the laws of the British Virgin Islands, having its principal place of business in a jurisdiction other than that of any corporate defendant herein, and other than the state of citizenship of the individual defendant herein.

2. Defendant AmerUs Life Insurance Company is a corporation organized and existing under the laws of the State of Iowa, having its principal place of business in said State.

3. Defendant Aviva Life and Annuity Company is also a corporation organized and existing under the laws of the State of Iowa, having its principal place of business in said State.

4. Upon information and belief, AmerUs Life Insurance Company was acquired by and merged with Aviva Life and Annuity Company in or about 1996, and Aviva Life and Annuity Company is successor to the liabilities of AmerUs Life Insurance Company set forth herein.

5. Defendant Larry D. Barker is a citizen of the State of New Mexico.

6. The amount in controversy, exclusive of interest and costs, exceeds $75,000.

7. This Court has subject matter jurisdiction hereof under 28 U.S.C. § 1332(a)(2) (diversity of citizenship), and a justiciable case or controversy exists by virtue of, *inter alia*, the federal Declaratory Judgment Act, 28 U.S.C. § 1331.

**Personal Jurisdiction**

8. Defendants, and each of them, transacted business in this Territory and/or contracted to supply services or things in this Territory, within the meaning of 5 V.I.C. § 4903(a)(1) and (2), and otherwise maintain minimum contacts with the U.S. Virgin Islands such that exercising *in personam* jurisdiction in this matter would comport with due process standards.

9. Specifically, and among other things, Defendant Barker entered into certain substantial contracts with Plaintiff's predecessor in interest, a Virgin Islands limited liability company, providing for the funding of life insurance with Barker as insured and as co-beneficiary, and entailing the outlay of more than $200,000 for Defendant's Barker's benefit, all as more specifically set forth herein.

10. Further, and specifically, Defendant Aviva Life And Annuity Company, through its predecessor in interest, AmerUs Life Insurance Company, entered into multiple, substantial life insurance contracts wholly or partially funded by Plaintiff's predecessors in interest or Virgin Islands affiliates, through premium funding/policy co-ownership arrangements similar or

related to the transaction *sub judice,* thereby receiving regular and substantial premium revenue from the Virgin Islands, including more than $200,000 in the transaction *sub judice* alone.

**SUBSTANTIVE ALLEGATIONS**

**The Parties**

11. Plaintiff Seaview Capital Partners, Inc. is the successor in interest by virtue of two assignments of contractual and related interests that are the subject of the present litigation. Plaintiff and/or its predecessors are hereafter collectively referred to as "Executive Benefit Group" or "EBG."

12. At all material times herein, Defendant AmerUs Life Insurance Company ("AmerUs Life"), predecessor to Defendant Aviva Life and Annuity Company, was engaged in the business of marketing, underwriting and distributing individual life insurance products to individuals and businesses.

13. Defendant Larry K. Barker is a "person to be joined if feasible" under Rule 19(a), Federal Rules of Civil Procedure, in that he has a substantial interest in the outcome in this litigation and further because proceeding with this litigation in his absence may subject the remaining defendants to duplicative and inconsistent adjudication. Defendant Barker is named strictly in his capacity as necessary party.

**The Co-Investment and Co-Ownership Agreements**

14. At all material times herein, Executive Benefit Group was primarily in the business of co-investing in or financing the acquisition of life insurance policies covering business executives and professionals. Under the arrangement *sub judice*, EBG provided the majority of the annual premiums for the life insurance policy, and received a substantial co-ownership interest in the death benefit, with the insured executive/professional retaining

exclusive rights to withdraw or borrow against the accrued cash value of the policy during his lifetime, and also retaining additional minority interests in the death benefit.

15. In or about December, 2003, EBG entered into a certain written Co-Investment Agreement, as well as a separate written Ownership Agreement for Life Insurance Policy, with Defendant Larry D. Barker ("Barker"), for the purchase of AmerUs Life Policy Number AB01390980 ("the Policy") insuring the life of Barker and having a death benefit of $1,325,475, and having an effective date of March 4, 2004.

16. Pursuant to the said Agreements between EBG and Barker, EBG was responsible for payment of 89% of the annual premium and Barker was responsible 11%.

17. AmerUs Life was fully apprised of all material terms and conditions of the arrangement between EBG and Barker; in fact representatives of EBG provided AmerUs Life with true and correct copies of both the Co-Investment Agreement and the Ownership Agreement for Life Insurance Policy between EBG and Barker, and further met personally with authorized representatives of AmerUs Life to explain the arrangements and to assure the understanding and approval of AmerUs Life of the Agreements, all prior to the issuance of the Policy.

18. AmerUs Life in fact approved the above-described arrangement between EBG and Barker, agreed to issue the Policy in furtherance thereof, and accepted substantial premium payments towards the Policy.

**The Application for Insurance**

19. In December of 2003, Barker submitted the Application for Insurance to AmerUs Life, with related documentation.

20. The Application for Insurance form, attached hereto as Exhibit A, at page 1, Paragraph 2, requires the applicant to identify the **"Owner,"** a defined term in the Policy; EBG was explicitly named and described in the Application for Insurance as **Owner** ("joint owner") and also identified by taxpayer ID number.

21. The Application for Insurance form further, at Paragraph 3, requires the applicant to identify the intended "**primary beneficiary**," and in the space calling for the name of the beneficiary, the terms "See Joint Ownership" are hand-written.

22. The Application for Insurance, Paragraph 8 and 9, requests life insurance in the fixed face amount of $1,325,475, with a modal "planned premium" of $50,561 annually but with the actual premium to be determined with reference to investment returns or interest on the premiums paid, all as more particularly set forth in the Policy.

**Material Terms of the Policy**

23. AmerUs Life issued the Policy, with an effective date of March 4, 2004. A true and correct copy of the Policy is attached hereto as Exhibit B.

24. Although the modal or "planned premium" specified in the Policy was stated to be $51,513.31 annually, or $4,393.78 "minimum" monthly payment for a minimum premium period of 5 years, or $5,652.49 for a "minimum" monthly period of 15 years, the "planned premium" (whether annual or monthly) was in fact the guaranteed maximum premium for the specified term, with the actual premium being variable and determined pursuant to certain complex provisions for an "Equity Indexed Strategy" to be periodically calculated, declared, and communicated to the **Owner** by AmerUs Life, all as set forth in the Policy at pages 3A through 3D,6, 7 and 10 through 14.

25. The Policy provides that the insurance terminates or **lapses** for nonpayment of premiums, or for insufficiency of the cash value to cover premium deductions, but only upon the expiration of a "**grace period**."

> **GRACE PERIOD**
> We allow a 60 day **grace period**, if on any monthly due date, the net cash value is not sufficient to cover the current monthly deduction. During this **grace period you** may pay a premium so that the net cash value is sufficient to cover the current monthly deduction. If the Insured dies during the grace period, we will deduct the amount of any unpaid monthly deductions from the proceeds. This policy continues in force during the grace period unless surrendered. (*Emphasis added.*)

Exhibit B, Policy, p. 6.

26. The Policy further provides:

> **LAPSE**
> If ***you*** do not pay sufficient premium [*sic*] within the **grace period**, all coverage under this policy, including additional benefits or riders, terminates without value. We will mail a notice of any premium due at least 30 days before the end of the grace period to ***your*** last known address, and the last known address of any assignee of record. (*Emphasis added.*)

Exhibit B, Policy, p. 7.

27. **"You"** and **"your"** are defined terms in the Policy, and "mean the **Owner** of this policy." Policy, Exhibit B**,** p. 2.

28. **"Owner"** is also a defined term in the Policy. "The **Owner** of this policy is the Insured *unless stated otherwise in the application*." Policy, Exhibit B**,** p. 5; *emphasis added.*

29. The application clearly and explicitly identifies EBG as **Owner** (joint owner) of the Policy.

30. Additionally, EBG was at least the legal equivalent of an "assignee of record," within the meaning of the notice provisions of the Policy.

31. AmerUs Life was fully aware that EBG was an **Owner** of the Policy; that EBG made a substantial investment in said Policy; that EBG was a primary beneficiary of the Policy; that EBG had in fact paid the overwhelming majority of the planned premiums due on the Policy, in the amount of $45,000 annually.

**Invalid Notice of Termination for Nonpayment**

32. Under the terms of the Policy, and otherwise as a matter of law, AmerUs Life had a duty to give EBG notice of the premium due and, separately, a 30-day notice of expiration of the **grace period**.

33. Valid notice was in fact a strict condition precedent to forfeiture under the Policy, as a matter of law.

34. AmerUs Life did not give EBG notice of any premium due, did not give EBG any 30-day notice of expiration of the grace period, and indeed did not give EBG any notice at all that the Policy was at risk of lapse.

35. In fact, EBG was unaware of any deficiency in premiums paid, and unaware of any threat to terminate the Policy, until after AmerUs Life declared the Policy to have lapsed.

36. Upon information and belief, AmerUs Life may have given some form of notice to Barker, on or about November 27, 2008, that the sum of $12,420.57 was due as and for a premium payment, and that the grace period was set to expire in January of 2009; however, Barker did not communicate this notice to EBG.

37. Had EBG been duly notified that the Policy was at risk of lapsing, EBG would have immediately paid the $12,420.57 claimed to be due by AmerUs Life, in order to avoid lapse of the Policy and the forfeiture of its investment, which had already amounted to $225,000 in premiums actually paid.

38. The Policy did not lapse, as a matter of law.

39. It would be inequitable for the Court to allow a lapse and forfeiture of the Policy.

**Acceptance of Partial Payments; Waiver, Estoppel**

40. AmerUs Life was at all times aware that EBG was paying the vast majority of the "planned premiums" on the Policy.

41. EBG in fact made the following payments:

| Pmt. No. | Date | Amount | Check No. | Period |
|---|---|---|---|---|
| 1. | February 19, 2004 | $45,000 | 2075 | March 4, 2004-March 4, 2005 |
| 2. | December 30, 2004 | $45,000 | 1436 | March 4, 2005-March 4, 2006 |
| 3. | January 16, 2006 | $45,000 | 1870 | March 4, 2006-March 4, 2007 |
| 4. | December 7, 2006 | $45,000 | 2471 | March 4, 2007-March 4, 2008 |
| 5. | December 31, 2007 | $45,000 | 3293 | March 4, 2008-March 4, 2009 |

42. Additionally, EBG, unaware that Policy was claimed to be at risk of lapse, on January 22, 2009 tendered its sixth (6th) annual payment in the usual amount of $45,000 (Check No. 4291) for the period March 4, 2008-March 4, 2009.

43. AmerUs Life rejected EBG's 6th premium check.

44. Despite demand, AmerUs Life has in bad faith failed and refused to render a true accounting to EBG, specifying (a) the actual premiums due for the entire five-year period between March 4, 2004 and March 4, 2009; (b) the actual amount of interest, dividends or earnings accruing to cash value and affecting the premium calculation for any given period, as well as the capability of AmerUs Life to simply deduct any premium due from cash value to avoid forfeiture; or (c) the amount and date of any and all payments made by Barker to AmerUs Life.

45. AmerUs Life had a duty to give timely notice to EBG of any deficiency in the payment of any premium or, in the words of the Policy, to give timely notice to EBG when "the net cash value is not sufficient to cover the current monthly deduction." Exhibit B, Policy, p. 6.

46. EBG reasonably relied, to its detriment, upon AmerUs Life's expected performance of its duty to timely notify EBG of any shortages in premium payments or "net cash value" of the Policy.

47. AmerUs Life accepted and retained all of EBG's payments of $45,000 without timely notice EBG of any deficiency in any premium payment or insufficiency of "net cash value."

48. To the extent that AmerUs Life accepted and retained partial payments of annual premiums from EBG despite a deficiency of payment or insufficiency of cash value, AmerUs Life waived its right to demand strict temporal compliance with premium payment obligations, as a matter of law and equity.

49. To the extent that AmerUs Life accepted and retained partial payments of annual premiums from EBG despite a deficiency of payment or insufficiency of cash value, AmerUs Life is estopped from demanding strict temporal compliance with premium payment obligations, as a matter of law and equity.

**Failure to Properly Apply EBG'S Premium Payment**

50. Under the terms of the Policy, EBG and Barker had the option of paying an annual premium ($51,513.31) or monthly premium ($4,393.78 for the same 5-year guaranty period or $5,652.49 for a 15-year guaranty period) for the coverage period March 4, 2008 through March 4, 2009.

51. Although it was originally intended by EBG that it would make annual payments (divided between EBG and Barker according to their Agreements *inter se*), annual payments were in no way required by the Policy, and in fact the Policy clearly contemplates that monthly premium payments, and not annual payments, were the usual method, fully acceptable to AmerUs Life.

52. EBG, on December 29, 2007, made a premium payment (Number 5) to AmerUs Life in the amount of $45,000 intended for the coverage period March 4, 2008 through March 4, 2009, and AmerUs Life accepted said payment.

53. The payment by EBG of $45,000 represents more than ten (10) monthly guaranteed maximum modal premiums of $4,393.78.

54. Said payment of $45,000, properly applied by AmerUs Life as monthly premiums, would have kept the Policy alive and in force for a period of ten (10) months from the annual policy renewal date of March 4, 2008, that is, until at least February 4, 2009

55. Accordingly, and giving EBG due credit for payment of 10 monthly premiums, AmerUs Life's invocation of the grace period/lapse provisions of the Policy in November 2008 was premature and invalid.

56. If the said payment of $45,000 were applied as monthly payments, the Policy would never have been terminated, because EBG timely tendered an additional payment of $45,000 in January of 2009, which payment was made before the **grace period**, properly computed, would have commenced and which payment was sufficient to keep the Policy in force for an additional ten (10) months.

57. AmerUs Life was required by its duty of good faith and fair dealing to so apply the EBG payments in question.

58. AmerUs Life acted improperly in failing to apply EBG's premiums as aforesaid, and in attempting to cause an unlawful and inequitable forfeiture of EBG's interests in the Policy.

WHEREFORE, Plaintiff prays that the Court enter judgment determining and adjudicating (1) that AmerUs Life (and/or its successor, Aviva Life and Annuity Insurance Company) acted wrongfully in declaring the Policy to have lapsed; (2) that the Policy did not in fact lapse; and (3) that the Policy remains in full force and effect. Plaintiff further prays for injunctive relief, *pendente lite* and permanent, compelling AmerUs Life and/or Aviva Life and Annuity Insurance Company to fully reinstate the Policy, *nunc pro tunc*, for an award of costs and attorney's fees, and for such other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED this 6th day of August, 2009.

*/s/ Edward L. Barry*
Edward L. Barry
Attorney for Plaintiff
Hamm & Barry
5030 Anchor Way
Christiansted, VI 00820
Tel. (340) 773-6955
Fax (340) 773-3092
email: elb@hammbarrylaw.com